IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Lisa Rainer,                    :

          Plaintiff,            :

          v.                    :     Case No. 2:05-cv-0859

Refco, Incorporated, et al.,    :     MAGISTRATE JUDGE KEMP

          Defendants,           :

     and,                       :

Andrew Gilliland,               :

          Plaintiff,            :

          v.                    :     Case No. 2:06-cv-0351

Refco, Incorporated, et al.,    :     MAGISTRATE JUDGE KEMP

          Defendants.           :

OPINION AND ORDER

     Lisa Rainer, a former employee of defendant Refco, filed
suit against Refco alleging that the termination of her
employment on February 17, 2005 constituted actionable
discrimination.  Andrew Gilliland, Lisa Rainer's son and a part-
time Refco employee, had his employment terminated on the same
date.  He filed the second of these now-consolidated actions
asserting that his employment was terminated in retaliation for
his mother's stance on sex discrimination in the workplace.  With
the consent of the parties, both cases have been referred to the
undersigned for final disposition pursuant to 28 U.S.C. §636(c).

     On September 14, 2006, Refco moved under Fed. R. Civ. P.
12(b)(6) to dismiss Mr. Gilliland's claim.  Responsive and reply
memoranda have been filed, and the motion is now ripe for

decision.  For the following reasons, the motion to dismiss will be granted, and the Clerk will be directed to enter a judgment terminating Case No. 2:06-cv-351.

I.

When considering a motion to dismiss pursuant to Fed. R. Civ. P. l2(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Scheuer v. Rhodes, 4l6 U.S. 232, 236 (1974); Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. l983).  When determining the sufficiency of a complaint in the face of a motion to dismiss, the court must apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 4l, 45-46 (1957). See also, McLain v. Real Estate Bd. of New Orleans, Inc., 444 U.S. 232 (1980); Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983), cert. denied, 469 U.S. 826 (1984).

A motion to dismiss under Rule 12(b)(6) is directed solely to the complaint itself. Roth Steel Products, 705 F.2d at 155.  Consequently, the Court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. Scheuer, 4l6 U.S. at 236. A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted. Roth Steel Products, 705 F.2d at 155.  The Court will grant a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the complaint is without merit because of an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief

2

indicating that the plaintiff does not have a claim.  <u>See</u>
<u>generally Rauch v. Day & Night Mfg. Corp.</u>, 576 F.2d 697, 702
(6th Cir. l978).

II.

The facts alleged in the complaint can easily be summarized.
Mr. Gilliland and his mother both worked for Refco.  They were
employed at its plant in Jackson County, Ohio.   While employed
by Refco, Lisa Rainer, Mr. Gilliland's mother, opposed what she
believed to be unlawful sex discrimination in employment at the
Refco facility.  Allegedly, in retaliation for that conduct,
Refco terminated both Mr. Gilliland's and Ms. Rainer's employment
on the same day, February 17, 2005.  Mr. Gilliland does not claim
that he engaged in any specific activity concerning allegedly
unlawful employment practices.  Rather, he asserts that
"defendants discriminated against him, terminated [his
employment]...because [his mother] has opposed what she believed
to be unlawful sex discrimination in employment and he [Mr.
Gilliland] was Rainer's son."  Complaint, ¶17.

Mr. Gilliland's complaint pleads four legal theories.  He
asserts that the termination of his employment is actionable
retaliation under Title VII of the Civil Rights Act of 1964, as
amended, and O.R.C. §4112.02(I).  He also alleges that the two
individual defendants are liable for aiding and abetting
employment discrimination and that he was discharged in violation
of the public policy of Ohio.  The motion to dismiss raises a
single legal issue: whether an individual who has not engaged in
activity protected by either Title VII or state employment
discrimination laws may claim unlawful retaliation if that
person's employment was terminated as a result of protected
activity engaged in by another person with whom the discharged
plaintiff has some type of relationship (such as, in this case, a
family relationship).  For the following reasons, the Court
answers that question in the negative.

III.

3

Not surprisingly, the issue presented by Mr. Gilliland's complaint has been discussed by a number of other courts in the years since Title VII was adopted.  There are decisions which favor his position and decisions which favor Refco's position. In analyzing this issue, the Court must answer the following three questions.  First, it must determine whether the outcome of this case is controlled by decisions from the Court of Appeals for the Sixth Circuit.  If not, the Court must determine on which side of the issue the weight of existing authority lies. Finally, the Court must determine which of the conflicting decisions are the more persuasive.  The Court addresses each of these questions in turn.

A.

The primary statutory provision at issue in this case, 42 U.S.C. §2000e-3(a), makes it unlawful for an employer to discriminate against any employee or applicant for employment "because [the employee or applicant] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee or applicant] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  On its face, this provision appears to be confined to direct retaliation against an employee who has himself engaged in protected activity under Title VII.  However, Mr. Gilliland argues that it was construed broadly by the Court of Appeals for the Sixth Circuit in EEOC v. Ohio Edison Co., 7 F.3d 541 (1993), and under that broad construction, his claim is cognizable.  If, as he contends, the Court of Appeals has decided this issue, there is no leeway for this Court to adopt a different interpretation of the statute. However, the Court is not persuaded that the Ohio Edison decision addresses the precise issue raised by Mr. Gilliland's complaint.

In Ohio Edison, the EEOC filed suit on behalf of a discharged employee, Johnnie Whitfield.  Shortly thereafter, he received an offer of reinstatement.  However, after a different

4

employee protested Mr. Whitfield's initial discharge, Ohio Edison
rescinded the offer of restatement.  Mr. Whitfield contended that
he was not rehired in retaliation for the other employee's
protest of Ohio Edison's unlawful employment practices.  Agreeing
with Ohio Edison that these facts, even if true, did not state a
claim for retaliation under 42 U.S.C. §2000e-3(a), the district
court dismissed the complaint.  The Court of Appeals reversed.

        The question presented to the Court of Appeals was described
in the Ohio Edison opinion as follows: "whether Title
VII...protect[s] an inactive employee from retaliation based on
the actions of some other employee."  Ohio Edison, 7 F.3d at 542.
The Court noted that the traditional formulation of the elements
of a retaliation claim generally requires that the plaintiff show
that he or she engaged in activity protected by Title VII.  Id.
at 543, citing Jackson v. RKO Bottlers of Toledo, 743 F.2d 370,
375 (6th Cir. 1984).  Under that formulation, the anti-
retaliation provisions of Title VII would not "specifically cover
the situation...in which the employee's...representative engages
in protective activity on his behalf and the employee, who had
his representative act for him, is then retaliated against."  Id.
The court noted that the parties had taken extreme positions on
this issue.  The EEOC contended that Title VII prohibits
discrimination against "any and all third parties in retaliation
for a co-employee's protected activity" while Ohio Edison
contended that Title VII reached no further than persons
"actually engaged in a protected activity."  Id.  The Court of
Appeals concluded that Mr. Whitfield's complaint presented a
factual situation falling in between these two extremes because
it involved "retaliation against an employee when he asked
another employee to act on his behalf in protesting allegedly
discriminatory practices."  This action, the Court of Appeals
concluded, fell within the ambit of §2000e-3.  The court rejected
"the conclusion of the District Court...that third parties, who
have not actually engaged in protective activities themselves,

5

can never sue under 42 U.S.C. §2000e-3(a)." Id. at 544.

Clearly, the issue presented in Ohio Edison and the issue
presented by Mr. Gilliland's complaint are different. Mr.
Gilliland does not assert that his mother was acting on his
behalf when she protested against allegedly unlawful employment
practices at Refco and that, as a result of that protest, his
employment was terminated. Rather, he pleads only that his
mother engaged in protected activity on behalf of herself or
other women in the workplace. Thus, the holding in Ohio Edison
does not control this case.

A strong argument can be made, however, that dicta in the
Ohio Edison opinion generally supports Mr. Gilliland's arguments.
In reaching its decision, the Ohio Edison court cited, first, the
principle that Title VII is to be construed broadly in order not
to frustrate its essential purpose. One of the purposes of the
act is to allow employees to engage in protected activity without
the threat of retaliatory action. Clearly, if an employer were
free to discharge any relative of an employee who complained
about discrimination without fear of liability, there would be a
chilling effect on the inclination of employees whose relatives
were part of the same workforce to complain about discrimination.
That chilling effect is inconsistent with the general remedial
purposes of Title VII. Second, the court cited with approval a
number of District Court decisions which held that Title VII is
violated under circumstances identical to those presented by Mr.
Gilliland's complaint. See e.g., DeMedina v. Reinhardt, 444
F.Supp. 573 (D.D.C. 1978) aff'd in part and remanded in part, 686
F.2d 997 (D.C. Cir. 1982), a case in which the Court held that
Title VII prohibited retaliation against a wife as a result of
the protected activities of her husband. The Court indicated
that it agreed with the reasoning of that decision "that any
plaintiff's allegation of reprisal for a relative's anti-
discrimination activities states a claim upon which relief can be
granted under Title VII." Ohio Edison, 7 F.3d at 544. Several

6

other such cases are cited in footnote one which appears on the same page, including <u>Kornbluh v. Stearns & Foster Co.</u>, 73 F.R.D. 307 (S.D. Ohio 1976) (Hogan, J.), a case which also appears to hold (albeit without extensive discussion) that summary judgment is not appropriate on a husband's claim that his employment was terminated because his wife engaged in picketing and other lawful activities against his employer over issues of discrimination. Nevertheless, these comments made by the Court of Appeals were not necessary to its decision.

The Court of Appeals has issued one additional decision which may have some bearing on the issue. In <u>Bell v. Safety Grooving & Grinding</u>, 107 Fed. Appx. 607 (6th Cir. Aug 24, 2004), the Court of Appeals held, in an unpublished opinion, that Title VII does not address a plaintiff's claim that he was not recalled to employment after a layoff because he was romantically involved with another employee who had filed a charge of discrimination against the employer. The court noted that it had found association with a protected party to be relevant under Title VII in just two situations, both of which involved direct discrimination against the plaintiff either because of his race or because he himself engaged in protected activity on behalf of minorities and women. <u>See</u> <u>Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick & GMC Trucks</u>, 173 F.3d 988 (6th Cir. 1999); <u>Johnson v. University of Cincinnati</u>, 215 F.3d 561, 575 (6th Cir. 2000). Because the plaintiff in <u>Bell</u> did not allege either discrimination based upon his own race or upon his having engaged in protected activity, the court held that he was not protected from retaliation simply because his girlfriend had complained about discrimination in the work place.

Obviously, the <u>Bell</u> decision, which is an unpublished decision, is not binding on this Court. Further, its persuasive value is somewhat diminished because it does not cite the <u>Ohio Edison</u> case or make any effort to distinguish or narrow <u>Ohio Edison</u>'s holding. This Court concludes that neither of these

7

decisions address precisely the issue raised here. Thus, the
Court must determine independently whether the applicable
statutory language supports Mr. Gilliland's claim, and whether
decisions by other courts construing that same language provide
persuasive reasons for adopting a particular construction of that
language.

B.

Courts of Appeals from three other circuits have addressed
the issue in this case. Each of those decisions has "held that
the protected activity of one family member does not create
automatic standing for another family member to maintain a claim
of retaliation under Title VII." Singh v. Green Thumb
Landscaping, 390 F.Supp. 2d 1129, 1136 (M.D. Florida 2005),
citing Fogleman v. Mercy Hospital, 283 F.3d 561 (3rd Cir. 2002);
Smith v. Riceland Foods, 151 F.3d 813 (8th Cir. 1998); and Holt
v. JTM Industries, 89 F.3d 1224 (5th Cir. 1996). Each of those
decisions does, in fact, conclude that the plain language of
§2000e-3(a) does not permit the construction urged by Mr.
Gilliland in this case. Perhaps the best-reasoned of the three
is the Court of Appeals for the Third Circuit's decision in
Fogleman.

The plaintiff in Fogleman and his father had both been
employed by the same hospital. The father claimed that he was
forced out of his job due to age and disability discrimination.
The son, who filed the action which ultimately came before the
Court of Appeals, alleged that his employment was terminated
three years later because his father had sued the hospital.
Although his claim was not brought under Title VII, it was
brought under other federal anti-discrimination laws which
contain language identical to that found in 42 U.S.C. §2000e-
3(a).

The Court of Appeals began its analysis with the language of
the statute. It noted that "[t]he plain text of the anti-
retaliation provisions requires that the person retaliated

8

against also be the person who engaged in protected activity...."
Fogleman, 283 F.3d at 568.  It acknowledged the argument "that a
literal reading of the anti-retaliation provisions is at odds
with the policies animating those provisions" and that
"enforcement of anti-discrimination laws depends in large part on
employees to initiate administrative and judicial proceedings."
Id.  The Court agreed that there was "no doubt that an employer
who retaliates against the friends and relatives of employees who
initiate anti-discrimination proceedings will deter employees
from exercising their protected rights."  Id. at 568-69.  Thus,
the case presented "a conflict between a statute's plain meaning
and its general policy objectives."  The Court of Appeals
concluded, however, that the conflict "ought to be resolved in
favor of the statute's plain meaning" unless to do so "would lead
to a patently absurd result that no rational legislature could
have intended."  Id. at 569.  The Court then concluded that
Congress may well have had reasons for limiting the reach of the
anti-retaliation provisions of the ADEA and similar statutes to
persons who engaged in protected activity, primarily because in
most cases, any relative or friend who is the target of
retaliation will also have participated in some manner in the co-
worker's charge of discrimination and will thereby be directly
protected by the anti-retaliation provisions.  The court also
noted that Congress may have been concerned that by expanding the
class of potential plaintiffs under such provisions beyond those
who have engaged in protected activity themselves, the door would
be open to "frivolous lawsuits [which would] interfere with an
employer's perogative to fire at-will employees."  Id. at 570.
Because the anti-retaliation provision still has significant
force even without construing it to reach the type of claims
presented by the Fogleman plaintiff, and because Congress could
have rationally chosen to use the wording in the statute which
plainly does not contemplate such suits, the Court of Appeals
concluded that it was required to give effect to the language

9

chosen by Congress and to uphold the dismissal of Mr. Fogleman's complaint.

The other two Courts of Appeals addressing this issue have also grounded their decisions on the plain language of the statute and, as well, the concern that if a cause of action is granted to some relatives of employees who complain about discrimination, such as spouses, the courts will be left with the difficult question of "which other persons should have automatic standing to guard against the risk of retaliation." See Holt v. JTM Industries, 89 F.3d 1224, 1227 (5th Cir. 1996). Holt also distinguished Ohio Edison, noting that "[t]he fact that the employee had engaged a 'representative' to act on his behalf to protest his discharge illustrates that the employee had opposed a discriminatory employment practice, as required under the anti-retaliation provisions of Title VII" and that his claim "fell within the plain meaning of the statute as one who has standing to sue for retaliation." Holt, supra, at n.2.

District Court decisions are more diverse. There are a number of early decisions, including the DeMedina decision cited by Ohio Edison, which favor the creation of a cause of action for persons situated similarly to Mr. Gilliland. On the other hand, a number of more recent District Court decisions, both from this and other judicial circuits, have reached the opposite conclusion. See Singh v. Green Thumb Landscaping, supra; see also Thompson v. North American Stainless, 435 F.Supp 2d 633 (E.D. Ky. 2006); Sukenic v. Maricopa County, 2004 WL 3522690 (D. Ariz. Jan. 7, 2004); but see Fortier v. United Food and Commerical Workers Local 876, 2006 U.S. Dist. LEXIS 59469 (E.D. Mich. Aug 23, 2006). Interestingly, the Thompson and Fortier decisions represent a split of authority between District Courts located within the Sixth Circuit, one of which relies on Ohio Edison as precedent and one of which distinguishes Ohio Edison along the lines set forth above. Also, as noted above, Judge Hogan denied summary judgment to an employer under similar

10

circumstances in the <u>Kornbluh</u> decision cited above, although the decision does not directly confront the issue of the conflict between the statutory language and the claims of a plaintiff who did not directly engage in protected conduct.  Finally, Judge Barrett of this Court, in <u>Ayres v. Brewer Co.</u>, 98 F.E.P. 1529 (S.D. Ohio July 26, 2006), permitted a plaintiff who had not directly engaged in protected activity to sue for retaliation under Title VII, but he noted that, like the plaintiff in <u>Ohio Edison</u>, others had complained about discrimination not just against themselves but on behalf of the plaintiff, thus bringing the case squarely within <u>Ohio Edison</u>'s "representative" rule.

Clearly, there is sufficient authority for the Court to choose either interpretation of the statute.  The question then becomes which interpretation is the more persuasive and which appears to this Court to reach the correct result.

C.

With respect to the interpretation of a statute enacted by Congress, "it is elementary that '[t]he starting point in every case involving construction of a statute is the language itself.'"  <u>Southeastern Community College v. Davis</u>, 442 U.S. 397, 405 (1979), <u>quoting Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723, 756 (1975)(Powell, J., concurring); <u>see also United States v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235, 241 (1989). If the statutory language is plain, it conclusively establishes the intent of the legislature except in those rare cases where the result of giving the statute its plain meaning is demonstrably different from the clear intent of the drafters of the statute.  <u>United States v. Ron Pair Enterprises, Inc.</u>, 489 U.S. at 242; <u>see also United States v. Underhill</u>, 813 F.2d 105, 111 (6th Cir. 1987).

Strict adherence to the rule that a statute is to be given its plain meaning has significant desirable consequences.  First, it discourages judicial legislating, thereby keeping the legislative power vested in the

11

appropriate and popularly-elected branch of government. It
also encourages the drafters of legislation to speak plainly
and precisely, knowing that if they do so, the courts will
enforce the law as it has been clearly articulated. Finally,
it promotes certainty in the law, eliminating the need for
resort to other interpretive devices such as a review of
legislative history, which is usually a grab-bag from which
support for almost any interpretation of a statute can
readily be plucked. There are cases, however, where Congress
has not clearly expressed in the language of a statute what
result was intended. "Where the literal language of the
statute does not conclusively reveal legislative intent, the
courts must look beyond literal meaning, analyzing the
provision in context with the whole." In re Arnett, 731 F.2d
358, 361 (6th Cir. 1984). Where the context of an entire
statute does not reveal the meaning of a particular
provision, resort to extrinsic aids to demonstrate
Congressional intent, such as legislative history, can be
an appropriate way to determine legislative intent, or at
least to support a particular reading of a statute where the
intent of the drafters is sufficiently obscure that it can
never be divined with certainty.

Here, the language of §2000e-3(a) appears clear. It makes
it unlawful only for an employer to retaliate against an employee
or applicant for employment who has himself or herself engaged in
some type of protected activity under Title VII. It does not, by
its terms, preclude the employer from taking similar retaliatory
action against others, even if the purpose and effect of that
retaliatory action would be to discourage employees or applicants
for employment from engaging in protected activity. Although one
of the purposes of Title VII is to encourage protected activity
and to free applicants or employees from the fear of retaliation
when they engage in protected activity, neither §2000e-3(a) nor
any other provision of Title VII appears to prohibit any and all

12

actions, no matter whom they are directed against and no matter
what they consist of, which would have *some* deterrent effect upon
protected activity.  There are simply some employer-initiated
disincentives to protected activity which fall outside Title
VII's reach.  Thus, this Court agrees with the <u>Fogleman</u> court and
decisions following <u>Fogleman</u> that the statute is plain on its
face and that under its plain meaning, Mr. Gilliland has no cause
of action.

        To be sure, in <u>Ohio Edison</u>, the Court of Appeals recognized
that to apply the language of the statute in a way which would
permit an employer to engage in retaliation simply because the
employee chose to have someone else present his or her claim of
discrimination would lead to an absurd result.  That is no more
than a recognition that Congress either intended, or did not
specifically prohibit, the use of traditional concepts of agency
law in construing the provisions of Title VII.  It would indeed
be an absurd result to say that if an employee chose to have
someone representing that employee in an agency capacity present
the employee's discrimination claim (such as by asking a union
steward to file a grievance or asking an attorney to file a
discrimination charge or a complaint), the employer could
retaliate against the employee simply because the employee did
not personally engage in protected activity.  <u>Ohio Edison</u>'s
interpretation of the statute effectively inserts the language
"directly or indirectly" into the provision which requires that
the person suing for retaliation have engaged in protected
activity.  It does not, however, mean that the statute can be
construed to protect persons who engaged in no protected
activity, either directly or through agents or representatives,
from being retaliated against under Title VII.  Because this
latter interpretation, unlike the interpretation adopted in <u>Ohio
Edison</u>, is at odds with the plain meaning of the statute, this
Court chooses not to adopt it.

        The Court acknowledges that the EEOC has expressed its view

13

that persons like Mr. Gilliland have cognizable legal claims under §2000e-3(a).  See EEOC Compliance Manual, Section 8-II (December 5, 2002).  However, the Court agrees with the analysis of the compliance manual set forth in Singh v. Green Thumb Landscaping, supra, which indicates that the manual's interpretation is not entitled to significant deference because it does not appear to be well-reasoned and is not supported by a thorough consideration of the various legal decisions which have reached the opposite conclusion.  Further, an agency's interpretation of a statute is not entitled to deference where it conflicts with the plain meaning of the statutory language.

The Court recognizes that it would be entirely consistent with the remedial statutory scheme established in Title VII to permit Mr. Gilliland to sue if, as he alleges, his employment was terminated simply because his mother had engaged in activity protected by Title VII.  Nevertheless, the Court is not free to rewrite the statute which governs his claim.  The Court finds the decisions which favor Refco's position to be the more thorough and well-reasoned and to be more consistent with the courts' obligation to give effect to congressional language whenever possible.  Consequently, the Court holds that Mr. Gilliland has no claim under Title VII.

Little additional discussion of Mr. Gilliland's other causes of action is needed.  Principles of construction applicable to Title VII apply equally to the Ohio Civil Rights statute.  Mr. Gilliland therefore has no claim for retaliation under O.R.C. Chapter 4112.  Similarly because neither state law nor federal statutes prohibit the termination of his employment under these circumstances, the Court cannot say that such termination contravened the clear public policy of Ohio.  Consequently, his complaint must be dismissed in its entirety.

IV.

Based upon the foregoing, the motion of defendant Refco, Inc. to dismiss (#9) is granted.  Mr. Gilliland's complaint is

14

dismissed with prejudice for failure to state a claim pursuant to
Fed. R. Civ. P. 12(b)(6).  The Clerk is directed to enter
judgment in favor of Refco on all claims asserted in Case No.


2:06-cv-351 and to terminate that case.  See Beil v. Lakewood
Engineering and Mfg.Co., 15 F.3d 546 (6th Cir. 1994).


                              /s/ Terence P. Kemp
                              United States Magistrate Judge